Taliab'erro, J.
On the 14th February, 1862, the plaintiffs entered into an agreement with the defendant through Hawkins & Norwood, acting as his agents, the substance of which seems to be that the plaintiffs were to pay the defendant, Smith, three thousand dollars upon the signing of the contract, for one hundred bales of cotton, of the average weight of four hundred pounds, which cotton, as the act expresses it, was then “being stored, and to be stored on his plantation, “ Oak Grove,” near Williams-port, Pointe Coupee parish, Louisiana.”
This lot of cotton was to be sent to one of the cotton presses in New Orleans for the plaintiffs, “within four weeks from the opening of the port of New Orleans, either by the raising of the blockade or by other means;” and the seller bound himself to send the cotton to New Orleans at any time before the raising of the blockade, provided the buyers could obtain the permission of the governor to that effect. One clause of the contract is, that “ all parties waive and renounce the benefit of any law requiring actual delivery by weighing as a condition to complete the sale.”
The commercial firm of Hawkins & Norwood signed this obligation, and bound themselves to furnish the purchasers with the like number of bales of cotton, of like weight and quality as called for by the contract, either by purchase from others or out of other receipts or stocks in their hands.
The plaintiffs allege an entire failure on the part of the defendants to fulfill their part of their contract, and pray that they be condemned in solido to deliver to plaintiffs the said one hundred bales of cotton according to the terms of the contract, with interest on the value thereof, or, failing in that, that they pay the plaintiffs one hundred thousand dollars as damages, and for general relief.
The defendant, Smith, in his answer, admits the contract sued upon, and avers that he complied with it as far as it was possible to do so. That from the time of the sale the cotton was at the risk of the plaintiffs; that the cotton sold to plaintiffs, together with defendant’s entire crop, was destroyed by an overpowering force, which he was unable to resist, and without any fault of his; that all the cotton produced in the year 1861, *117 on his plantation, called “ Oak Grove,” was burned by armed bands of men, on or about the 10th of May, 1862. He further avers that, under the agreement entered into with plaintiffs, they were to pay him three thousand dollars, upon his signing- the act, but that they have failed to do so; that the pretended payment made by them was in notes issued by the “ so-called Confederate States,” and that if said notes were received by his agents, they were so received without his authority, and that the said pretended payment is not binding upon him, and that the plaintiffs are indebted to him for the full value of the said cotton, viz: three thousand dollars, with five per cent, interest, from the 14th February, 1862. He avers that the dealing in and using Confederate treasury notes was contrary to law and good morals. He prays judgment in reconvention against the plaintiffs for three thousand dollars and interest, and tenders them a transfer of all his right to claim damages against the parties who burned the cotton.
The defendant, Norwood, admits he was a member of the commercial firm of Hawkins & Norwood, but denies that he ever signed or sanctioned the contract sued upon; that the act of guarantee or insurance expressed in the instrument sued upon, if signed with the partnership name, was an unauthorized act of his partner Hawkins, not within the range of the business they were engaged in, and not obligatory upon him. Upon these issues the parties went to trial before a jury, which rendered a verdict in favor of the defendants, rejecting the defendant Smith’s reconventional demand. The plaintiffs have appealed.
We think the evidence fully sustains the defense. It is sufficiently clear from the written contract, expressed as it is in terms somewhat obscure, that the plaintiffs bought of the defendant, Smith, one hundred bales of cotton of his crop, grown on the “Oak Grove ” plantation, in the year 1861. That in conformity with the agreement, Hawkins & Nor-wood received the plaintiffs’ check on the Citizens’ Bank, for three thousand dollars, which check was endorsed by Hawkins & Norwood, or some one authorized by them, and placed to their credit in the bank. It is equally clear from the words of the act and its general tenor and import, that from and after the signing of the instrument the sale was complete ; the hundred bales of cotton delivered and at the risk of the purchasers; that the only obligation remaining on Smith was that of using a prudent care over the cotton to preserve it, and to ship it to the plaintiffs in New Orleans in accordance with the stipulation in regard to that part of the contract; that before the time arrived, at which he was bound to forward the cotton to the plaintiffs in New Orleans, the entire crop produced on the “Oak Grove” plantation, in the year 1861, consisting of over six hundred bales, was utterly destroyed by fire, producing a ruinous loss, which the exercise of no prudence or means whatever in the power of the defendant could have prevented, and he is therefore exonerated by Art. 1910 of the Civil Code.
Smith, having complied with his part of the obligation, Hawkins & Norwood were no longer bound under their guarantee for Smith’s performance.
In regard to the reconventional demand set up by the defendant for the price of the cotton, we do not think it well founded. The testimony *118 of the cashier and paying teller of the Citizens’ Bank is to the effect that at the time the check of the plaintiffs in payment of the cotton was received, the bank payed Confederate notes or notes of the local banks, at tjie option- of persons presenting checks for payment. This does not establish that payment was made in Confederate treasury notes. We see no reason why the judgment of the lower Court should be disturbed.
It is therefore ordered, adjudged and decreed that the judgment of the Distript Court be affirmed, with costs in both Courts. ■